**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| ARLENID DAYAN ORTIZ-AVILA,<br>Petitioner,<br>v.<br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. EDCV 26-5842-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On September 28, 2026, Arlenid Dayan Ortiz-Avila (A# 077-096-424) ("Petitioner"), who is pro se and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") claiming that Respondents violated due process by revoking his parole and re-detaining him on September 15, 2026, without prior notice or sufficient cause. (Dkt. No. 1). On October 13, 2026, Respondents filed an Answer to

the Petition, arguing that Petitioner was lawfully re-detained because ICE intends to effectuate his removal order by removing him to a third country, and his detention remains presumptively reasonable under Zadvydas v. Davis, 533 U.S. 678 (2001). (Dkt. No. 9).

For the reasons stated below, the Petition is GRANTED, and Respondents are ORDERED to release Petitioner immediately from immigration detention under the same conditions to which he was subject prior to his current detention.[1]

## BACKGROUND

Petitioner is a native and citizen of Honduras who last entered the United States in January 2000, was convicted of several misdemeanor offenses in California for disturbing the peace (Cal. Penal Code § 415) and sexual battery (Cal. Penal Code § 243.4) and was subsequently detained by immigration authorities in 2008 or 2009 and charged as inadmissible under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i). (See Dkt. No. 9-2 at 2-3). On March 10, 2011, an immigration judge ordered Petitioner removed from the United States but granted his petition for withholding of removal as to Honduras.[2] (See Dkt. No.

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 2, 4-5).

[2] Petitioner seems to allege that on March 10, 2011, he appealed the denial of his application for asylum and withholding of removal and that appeal is still pending. (See Petition at 5). But that appears to be an error, as the record reflects that the application for withholding was granted on March 10, 2011, and

9-2 at 3; Dkt. No. 9-3; Petition at 4). Petitioner was released with an order of supervision ("OSUP") on or about March 15, 2011. (See Dkt. No. 9-2 at 3; Petition at 6).

More than fifteen years later, on September 15, 2026, ICE arrested Petitioner at a check-in appointment and served him a Notice of Revocation of Release and a Notice of Removal.[3] (See Dkt. Nos. 9-1, 9-2, 9-4; Petition at 2, 4).

**DISCUSSION**

Petitioner is detained under 8 U.S.C. § 1231(a), which "governs the detention, release, and removal of individuals

---

there is no indication than any appeal remains pending. (See Dkt. No. 9-3; see also Executive Office for Immigration Review (EOIR), Automated Case Information, https://acis.eoir.justice.gov).

[3] Several of the dates provided on Respondents' form I-213 "Record of Deportable/Inadmissible Alien" are inconsistent and appear to be typographical errors. (See Dkt. No. 9-2). For example, the form – which is dated September 15, 2026 – states at one point that ICE officers "encountered" Petitioner at a check-in appointment on September 15, 2026, and "arrested" him on September 21, 2026, while the form also states on the next page that ICE revoked Petitioner's OSUP and "served [him] with a third country Notice of Removal" on September 15, 2011. (Id. at 2). Notwithstanding these discrepancies, it seems clear that the arrest, revocation of OSUP, and service of the Notice of Removal and other documents occurred only on September 15, 2026. This is clear because the I-213 itself is dated September 15, 2026, as are the attached "Notice of Removal" and "Notice of Revocation of Release, and Petitioner also alleges he was re-detained on that date. (See Dkt. Nos. 9-1, 9-2, 9-4; Petition at 2, 4). (The form I-213 also sometimes refers to Petitioner using female pronouns, though male pronouns are used elsewhere and in Respondents' Answer. While it is unclear which is correct, male pronouns appear more frequently and are therefore used here for the sake of consistency.)

'ordered removed.'" Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). Under § 1231(a), the Attorney General is directed to remove noncitizens subject to final orders of removal within ninety days (the "removal period"), and is further directed to detain such noncitizens during the removal period. 8 U.S.C. § 1231(a)(1)-(2); Arteaga-Martinez, 596 U.S. at 578. After the removal period expires, the government "may" detain only specified categories of people, while all others must be released on supervision. See 8 U.S.C. § 1231(a)(3), (6).

Once released from custody, a noncitizen subject to a final order of removal must comply with certain conditions of release. See id. The revocation of that release is governed by 8 C.F.R. § 241.4(*l*)(1) and § 241.13(i), which provide that ICE may revoke release when a noncitizen violates a condition of their release, 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(1), or when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Section 241.4(*l*)(2) also gives certain designated officials discretion to revoke release if certain findings are made. It states:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's

> opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(2) (emphases added).

Notwithstanding Respondents' assertion that the government is "broadly authorized to exercise its discretion to revoke release under this authority pursuant to 8 CFR § 241.1(*l*)(1), and 8 CFR § 241.4(*l*)(2)" (Answer at 4), the government's authority is thus constrained in multiple respects by these governing regulations as well as the constitutional due process rights of noncitizens. Among other things, "[b]oth § 241.4 and § 241.13 'require, at a minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond.'" Cruz v. Rios, 2026 WL 973367, at *2 (C.D. Cal. Apr. 8, 2026) (quoting Vo v. Lyons, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026)); see also Gulinian v. Noem, 2026 WL 849285, at *3 (C.D. Cal. Mar. 3, 2026) ("To comport with due process, a notice of revocation must provide

more than '[c]onclusory assertions that a detainee can be removed from the United States.' Rather, the notice must provide particular changed circumstances that apply to the noncitizen specifically, so that the noncitizen has an opportunity to challenge the asserted reasons." (citations omitted)). The government is required to follow these revocation procedures, and the failure to do so renders a detainee's re-detention unlawful. See, e.g., Nguyen v. Noem, 817 F. Supp. 3d 889, 899 (C.D. Cal. 2025) ("A growing number of courts — including this one — have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release."); Morales Sanchez v. Bondi, 811 F. Supp. 3d 1166, 1173 (C.D. Cal. 2025) ("[T]he Court is persuaded that the regulations constitute binding legal requirements for ICE's revocation process.").

Respondents fail to demonstrate that they complied with governing regulations and due process when revoking Petitioner's release. When ICE officers re-detained Petitioner on September 15, 2026, they served him with a Notice of Revocation of Release advising him that his release was being "revoked pursuant to 8 C.F.R. § 241.4(*l*)" for the following reason:

> It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal.

(Dkt. No. 9-4 at 1). Beneath this statement, the notice informed him:

> On 3/10/2011, you were ordered removed to Honduras, but you were granted withholding of removal to Honduras. Your case is under review for removal to an alternate country.

(Id.). No other reason or explanation was given for revoking Petitioner's OSUP, aside from these vague, boilerplate statements. Because these statements failed to identify any individualized facts showing why revocation was warranted, they did not provide sufficient notice under § 241.4(*l*). See, e.g., M.P.P.P. v. Santacruz, 2026 WL 1601908, at *2 (C.D. Cal. June 1, 2026) (notice of revocation did not provide adequate notice when it stated, without any concrete facts, that petitioner's release was revoked under § 241.4(*l*) because ICE had determined it was "appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal" and that petitioner's case was "under review for removal to an alternate country"); Gutnik v. Bondi, 2026 WL 700546, at *2-3 (C.D. Cal. Mar. 5, 2026) (same); Omorodion v. Guadian, 2026 WL 2923746, at *7 (D. Md. Sept. 29, 2026) (same); Cruz v. Rios, 2026 WL 973367, at *2-3 (similar). Because of this conclusory notice, "Petitioner lacked a meaningful opportunity to understand or object to the government's basis for revocation." M.P.P.P., 2026 WL 1601908, at *2 (citing Morales Sanchez, 811 F. Supp. 3d at 1175-76).

Indeed, there is no indication that Respondents had taken any steps toward removal at that time, or that Petitioner's circumstances had changed in any material respect since his release

on OSUP more than fifteen years earlier. It seems evident that Respondents had not yet even determined which "third country" they intended to remove Petitioner to. The Notice of Removal that Petitioner was given that same day, September 15, 2026, states only:

> This letter is to inform you that [ICE] intends to remove you to a third country.

(Dkt. No. 9-1). Moreover, Respondents have not suggested that Petitioner had been preventing any efforts to remove him, or that he was otherwise noncompliant with the conditions of his OSUP. Respondents therefore fail to justify their decision to re-detain him at his September 15 check-in appointment. See also Morales Sanchez, 811 F. Supp. 3d at 1175–76 ("Respondents' own explanation that ICE is 'actively exploring a third country' that might accept Petitioner falls far short of demonstrating that removal is imminent or that the purpose of release has been served, as required under 8 C.F.R. § 241.4(*l*)(2).").

Additionally, the revocation also failed to comport with § 241.4(*l*)(2) because it was not done by an official authorized to make this determination.[4] Section 241.4(*l*)(2) authorizes only

[4] "Section 241.4 offers two bases to revoke an OSUP: (1) if the alien violates a condition of the OSUP; or (2) on the authority of the Executive Associate Commissioner or a district director." E.M.M. v. Almodovar, 2025 WL 3077995, at *5 (S.D.N.Y. Nov. 4, 2025) (8 C.F.R. § 241.4(l)(1), (2)). Because ICE purported to revoke Petitioner's release based on § 241.4(*l*) and did not find that he

either an "Executive Associate Commissioner" or "district director" to revoke release. 8 C.F.R. § 241.4(l)(2). Under governing regulations, "Commissioner" refers to the "Director of U.S. Citizenship and Immigration Services, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S. Immigration and Customs Enforcement," while "district director" refers to an "asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge." 8 C.F.R. § 1.2. According to the Notice of Revocation here, Petitioner's revocation was authorized by "Assistant Field Office Director" S. Hottya. (Dkt. No. 9-4 at 2). That position is not included among those that qualify as either a "Commissioner" or a "district director." For that reason, "[m]any courts have found that they cannot conclude an assistant field office director has the authority to revoke release because it is 'far from clear' that the term 'district director' includes an assistant field office director." Tanashyan v. Mullin, 2026 WL 2538250, at *4 (C.D. Cal. Aug. 27, 2026) (collecting cases); see also Ndoye v. Joyce, 2026 WL 306387, at *5 (S.D.N.Y. Feb. 5, 2026) ("[H]abeas should issue when ICE violated its own regulations by improperly entrusting the discretionary authority of the Executive Associate Commissioner or a district director to an assistant field officer[.]" (citing E.M.M. v. Almodovar, 2025 WL 3077995, at *6 (S.D.N.Y. Nov. 4, 2025))).

---

had violated any conditions of release, the revocation rested on the latter basis and thus needed to comport with § 241.4(*l*)(2).

Moreover, even if the Assistant Field Office Director had qualified as a "district director," Respondents fail to show that this person made the requisite findings here to exercise authority under § 241.4(*l*)(2). As indicated above, "the language of section 241.4 specifically limits the power of anyone who is not the Executive Associate Director to revoke release. For example, it provides that '[a] district director may also revoke release of a[ noncitizen] when' — and only when — 'in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director].'" Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 161–62 (W.D.N.Y. 2025) (quoting 8 C.F.R. § 241.4(*l*)(2)). Because there is no evidence that the Assistant Field Office Director made these findings, there was no authority to revoke release under § 241.4(*l*). See Lasko v. Rife, 2026 WL 2098256, at *4–5 (E.D. Pa. July 20, 2026) (OSUP was not lawfully revoked under § 241.4(*l*)(2) where there was no evidence suggesting that the officer determined revocation was in the public interest or that circumstances did not reasonably permit referral to Executive Associate Director). As other courts have concluded, the failure of an authorized official to make the appropriate revocation finding under § 241.4(*l*)(2) "violates due process and thus mandates release." Tanashyan, 2026 WL 2538250, at *5; see also M.P.P.P., 2026 WL 1601908, at *4; Miller v. Mullin, 2026 WL 1802427, at *5-6 (C.D. Cal. June 18, 2026); Gazazyan v. Bondi, 2025 WL 3898484, at *5-6, *10 (C.D. Cal. Nov. 7, 2025); Lasko, 2026 WL 2098256, at *5; Ndoye, 2026 WL 306387, at *5; Ceesay, 781 F. Supp. 3d at 161–62.

Respondents oppose the Petition largely on the ground that relief is not warranted under Zadvydas v. Davis, 533 U.S. 678 (2001), which established that detention pursuant to 8 U.S.C. § 1231(a)(6) is presumptively reasonable for up to six months. (See Answer at 2-4). But although Petitioner has been detained for only a few weeks, the length of detention is not dispositive here. See, e.g., Chong v. Santacruz, 2025 WL 4631998, at *7 (C.D. Cal. Dec. 29, 2025) ("To be sure, Zadvydas provided that a six-month detention is where the 'presumption' of constitutional reasonableness ends. But '[p]resumptively reasonable does not equate to mandatory.'" (citations omitted)). Rather, for the reasons explained above, Petitioner merits release from detention because Respondents have failed to demonstrate that they had legally sufficient basis to revoke his release. See, e.g., Nazarian v. Noem, 2025 WL 3236209, at *5 (C.D. Cal. Nov. 3, 2025) (granting release because petitioner was challenging his re-detention, as distinct from Zadvydas, and government failed to meet its burden under 8 C.F.R. §§ 241.13(i)(2)-(3) to show changed circumstances that made removal significantly likely in the reasonably foreseeable future).

**ORDER**

Accordingly, the Court GRANTS the Petition (Dkt. No. 1) and ORDERS Respondents to release Petitioner Arlenid Dayan Ortiz-Avila (A# 077-096-424) immediately from immigration detention under the same conditions to which he was subject prior to his current

detention. Respondents also shall file a “Notice of Release” within three days of the date of this Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 15, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE